# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JACKIE W. LEWIS, SR.,**
**Claimant Below, Petitioner**

**FILED**
**September 5, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-204**        (JCN: 2022008108)

**COLUMBIA WEST VIRGINIA CORPORATION,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Jackie W. Lewis, Sr., appeals the April 24, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Columbia West Virginia Corporation ("Columbia") filed a response.[1] Mr. Lewis did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim on a non-medical basis.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lewis was employed by Columbia from 1992 to 2019, spending most of that time as a dryer tender. Mr. Lewis filed an Employees' Report of Occupational Pneumoconiosis dated August 17, 2021, alleging that he was exposed to the hazards of occupational pneumoconiosis ("OP") during his employment with Columbia. On August 17, 2021, a pulmonary function test was performed. Daniel Doyle, M.D., interpreted the spirometry study as showing mild obstruction by GOLD criteria and normal by ATS-86 severity criteria, with a normal DLCO. An x-ray study was also performed the same day, revealing no evidence of OP, but right peripheral pleural thickening was shown. Afzal Ahmed, M.D., indicated on the Chest Radiograph Classification report, dated August 17, 2021, that classifiable pleural abnormalities but no parenchymal abnormalities were found.

On May 9, 2022, Mr. Lewis was deposed. He testified that he was employed by Columbia from 1992 to 2019, and he was a dryer tender for most of that time. Mr. Lewis stated that he was responsible for overseeing two dryers. He stated that he would walk from

---

[1] Mr. Lewis is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Columbia is represented by Patricia E. McEnteer, Esq.

one end of the dryers to the other to make sure the wood was going into and out of the dryers properly. Mr. Lewis testified that he was exposed to dust when the dryers would plug up and he would have to go into the dryers and dislodge the wood that would become stuck. Mr. Lewis testified that he did not stay in the dryer long due to the heat; he estimated that he would be in the dryer from three to six hours, but not consecutively. Mr. Lewis stated that he also had to enter the dryer when there was a fire in the dryer, which occurred every two to three weeks; he would have to shut the dryer down and enter the dryer to extinguish the fire. Mr. Lewis testified that the dryers were shut down and cleaned every two weeks by himself and six other employees. He stated that each dryer had four exhaust fans and that there were additional fans throughout the plant. Mr. Lewis testified that he wore a heavy mask every time he entered the dryer and when he thought there was dust in his work area. He stated that the masks were "good masks."

Christopher Groves, Columbia's Plant Manager, was deposed on October 26, 2022. Mr. Groves testified that he had been employed by Columbia since 1996 in various positions and he was familiar with all aspects of the activities and processes of the plant. Mr. Groves stated that he visits the dryer area once per day. Mr. Groves testified that dust masks were made available to employees, but they are not required because the dust levels in the plant are "nowhere near" the thresholds that would require masks to be worn.[2] Mr. Groves testified that he would not consider the dryer tender position a dusty position because dust is not generated in the drying process, and dust is not visible in this area. He stated that there was no cutting or abrasion of the wood that would produce dust.

On April 24, 2023, the Board issued an order affirming the claim administrator's order which rejected the claim. The Board found that Mr. Lewis failed to establish that he had the requisite exposure for an OP claim. Mr. Lewis now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;

---

[2] Columbia submitted to the Board three dust sample reports from 2002, 2005, and 2013 indicating that the dust in the dryer was within permissible levels. The dust sampling was performed by a certified industrial hygienist.

(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Lewis argues the Board failed to consider Mr. Lewis' testimony regarding his dust exposure. Mr. Lewis further argues that the Board gave undue weight to the testimony of Mr. Groves regarding the amount of dust in the dryer area. We disagree.

West Virginia Code § 23-4-1(b) (2021), in part, provides that:

compensation is not payable for the disease of occupational pneumoconiosis, or death resulting from the disease, unless the employee has been exposed to the hazards of occupational pneumoconiosis in the State of West Virginia over a continuous period of not less than two years during the 10 years immediately preceding the date of his or her last exposure to such hazards, or for any five of the 15 years immediately preceding the date of his or her last exposure . . . .

The Supreme Court of Appeals of West Virginia has held that "a 'hazard,' as contemplated by [West Virginia] Code [§] 23-4-1, as amended, exists in any work environment where it can be demonstrated that there are minute particles of dust in abnormal quantities." Syl. Pt. 1. *Meadows v. Workmen's Comp. Comm'r.*, 157 W.Va. 140, 198 S.E.2d 137 (1973). The Supreme Court has further held that a claimant cannot demonstrate exposure "merely by employment at a dusty location;" a claimant must establish that they have been exposed to abnormal quantities of dust during their employment. *See Fletcher v. W. Va. Office of Ins. Comm'r.*, No. 11-0404, 2012 WL 5471438 (W. Va. Oct. 2012) (memorandum decision).

Here, the Board found that the testimony of Mr. Lewis did not establish that he was exposed to abnormal quantities of dust. The Board further found that the testimony of Mr. Groves did not establish that abnormal quantities of dust exist in the dryer area. Ultimately, the Board found that Mr. Lewis failed to establish that he had the requisite exposure to the hazards of OP under West Virginia Code § 23-4-1(b).

Upon review, we conclude that the Board was not clearly wrong in finding that the testimony and evidence presented did not establish that Mr. Lewis was exposed to abnormal quantities of dust during his employment as required by West Virginia Code § 23-4-1(b).

Our review is deferential to the Board. West Virginia Code § 23-5-12a(b) sets forth the same standard of review as was previously required of the Board when it reviewed decisions by the Office of Judges per West Virginia Code § 23-5-12 before the 2021 statutory amendments became effective. In considering West Virginia Code § 23-5-12, the Supreme Court of Appeals of West Virginia stated that the Board was required to accord deference to the decisions by the OOJ. *See Conley v. Workers' Comp. Div.*, 199 W. Va. 196, 203, 483 S.E.2d 542, 549 (1997).

Further, we must defer to the Board's credibility determinations. *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Accordingly, we affirm the Board's April 24, 2023, order.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

4